825 F.2d 411
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Cynthia LACY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 85-1915
 United States Court of Appeals, Sixth Circuit.
 Aug. 4, 1987.
 
 Before ENGEL, JONES and NELSON, Circuit Judges.
 ENGEL, Circuit Judge.
 
 
 1
 Plaintiff, Cynthia Lacy, appeals from an order of the United States District Court for the Eastern District of Michigan affirming the Secretary's denial of a period of disability and disability insurance benefits. We affirm.
 
 I.
 
 2
 Plaintiff was thirty-two years old at the time of her hearing before the administrative law judge on May 23, 1984. She has a twelfth-grade education. She claimed in her application for benefits that since April 16, 1982 she has been unable to work because of a back injury. She last worked as a nurse's aide and has five years' experience in that work.
 
 
 3
 On August 14, 1984 the ALJ issued a decision denying Ms. Lacy's claim for benefits. The ALJ reached the following conclusions. Plaintiff had not engaged in substantial gainful activity since April 16, 1982. She did not have an impairment that would qualify her for disability status under the Listing of Impairments in 20 C.F.R. Part 404, Subpt. P. App. 1. However, her back condition was serious enough to preclude her from performing her past work as a nurse's aide. See 20 C.F.R. 404.1520(e). Furthermore, in that work she did not acquire skills that would be transferable to other skilled or semi-skilled work. See C.F.R. Sec. 404.1568. The ALJ denied benefits because he found the plaintiff able to perform sedentary work. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.28. The Appeals Council denied review, making the ALJ's decision the final decision of the Secretary.
 
 
 4
 The sole issue in this appeal is whether the ALJ erred in finding plaintiff able to do sedentary work as defined in 20 C.F.R. Sec. 404.1567(a):
 
 
 5
 Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
 
 
 6
 Our review is limited to a determination of whether the Secretary's decision is supported by 'substantial evidence.' 42 U.S.C. Sec. 405(g). Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion.' Richardson v. Perales, 402 U.S. 389, 401 (1971).
 
 II.
 
 7
 Plaintiff's back condition, according to the ALJ's findings, consists of 'arachnoiditis affecting the lumbar region and degenerative disc disease of the lumber spine at L5 to S1 with a nerve root irritation.' Plaintiff testified at the hearing before the ALJ that back pain and leg cramps prevent her from engaging in sustained physical activity. She said that her only activities are making meals for her children and some housework.
 
 
 8
 The plaintiff explained that when she does physical activity the pain forces her to alternate between sitting, standing, and lying down. When asked how long she can sit, plaintiff answered that the most she can sit is 'about 30 minutes without having to get up and stretch and walk around . . . and then sit back down.' In another place plaintiff said that on a good day
 
 
 9
 I can . . . fix the kids breakfast with no problem and I can even wash the dishes. Then I have to sit down for three to four hours, you know, getting up periodically stretching, as I say walking around. I'm on my feet a lot that increases my leg cramps. That's why everything I do I do a little at a time, I sit down, I pretty much move at my own pace as how I feel.
 
 
 10
 In response to the question how long she can stand, plaintiff responded: '[M]ost the [sic] standing I can do is washing dishes and I wash some and sit down and go back and wash some more . . ..' App. 47-48.
 
 
 11
 The ALJ also heard testimony from Dr. Robert Hall, a board-certified orthopedic surgeon who reviewed the medical evidence and testified in the capacity of medical advisor. Dr. Hall stated that the evidence did not support the plaintiff's assertion that she needs to lie down during the day. Generally, however, Dr. Hall believed the plaintiff's testimony: 'I really think she's an honest person and was trying to describe her problems, not overly [sic] doing it too much.' Dr. Hall stated that the plaintiff can do sedentary work, and in reaching this conclusion he again suggested that he accepted plaintiff's testimony: 'if I'm not saying that she is telling me things that are necessarily untrue, I'm trying to weed through everything and in my opinion what she's telling me sedentary work skills could be done.' Finally, Dr. Hall stated that in doing sedentary work the plaintiff would not be able to sit or stand for long periods. Specifically, 'if she could stand up every half hour for a short period of time and then be able to sit down, she could do that.'
 
 
 12
 A vocational expert, Mr. Michael Rosko, testified that 'Ms. Lacy could perform a sedentary job with a sit/stand option.' Such a job would allow plaintiff to sit for fifteen or twenty minutes and then get up and stretch. According to Mr. Rosko, such jobs exist in the areas of packaging, sorting, and visual inspection.
 
 
 13
 In finding plaintiff able to do sedentary work, the ALJ took into account plaintiff's need 'to sit or stand at her option.' On the basis of the vocational expert's testimony, the ALJ found that compatible jobs exist.
 
 III.
 A.
 
 14
 This court has held that when a plaintiff cannot sit or stand for long periods but must be free to alternate between sitting and standing as comfort requires, the plaintiff is unable to do sedentary work unless testimony by a vocational expert shows that jobs are available in which a sit/stand option can be accommodated. Howse v. Heckler, 782 F.2d 626, 628 (6th Cir. 1986); Wages v. Secretary of HHS, 755 F.2d 495, 498 (6th Cir. 1986). In the present case the ALJ relied on a vocational expert who expressly took into account plaintiff's limitations in sitting and standing and testified that jobs are available that can accommodate those limitations. Thus, the ALJ complied with the procedure required by Howse and Wages.
 
 B.
 
 15
 The plaintiff argues that the ALJ erred in failing to give reasons for discrediting her testimony. In support she cites Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974). But this case says that an ALJ must explain why he prefers certain medical evidence over other, contradictory medical evidence. In the present case the ALJ relied on the uncontradicted medical opinion of Dr. Hall and thus made no error under Baerga. A careful reading of Dr. Hall's testimony, in light of the medical record, provides a legally sufficient basis for the ALJ's credibility finding.
 
 
 16
 The plaintiff also cites Hurst v. Secretary of HHS, 753 F.2d 517 (6th Cir. 1985) for the proposition that an ALJ must list evidence supporting his conclusion that a plaintiff's allegations of pain are not credible. But in Hurst the ALJ made 'no credibility determination' with regard to the plaintiff's allegations of pain: 'the Secretary simply report[ed] that stiffness and pain are criteria and then discusse[d] other criteria, as though stiffness and pain are totally irrelevant.' In the present case Dr. Hall found the plaintiff's assertion of a need to lie down during the day unsupported by the medical evidence. Dr. Hall found the rest of plaintiff's testimony credible, but he attached consequences to it that she disputes. By accepting Dr. Hall's conclusions, the ALJ made a credibility determination, which is all that Hurst requires.
 
 C.
 
 17
 The plaintiff argues that the present case is similar to Sherrill v. Secretary of HHS, 757 F.2d 803 (6th Cir. 1985), where the court found error in the ALJ's reliance on the testimony of a medical advisor. The court in Sherrill held that the ALJ should not have relied on the medical advisor's testimony for three reasons. First, the medical advisor's testimony in Sherrill contradicted the testimony of the plaintiff's examining physician. Second, the plaintiff's impairment was psychiatric, but the medical advisor's specialities were in other fields. Third, the medical advisor's testimony was ambivalent as to whether or not the plaintiff was disabled.
 
 
 18
 The first factor in Sherrill is inapplicable here, because Dr. Hall's testimony does not contradict the evidence provided by plaintiff's examining physician, Dr. Alvin M. Brown. Dr. Brown reported that plaintiff is 'unable to engage in any activities requiring prolonged standing, prolonged sitting, repetitive bending, push-pull type motions, and lifting above 20 lbs.'
 
 
 19
 The second Sherrill factor is also inapplicable, because Dr. Hall, as a board-certified orthopedic surgeon, is a specialist in the area of medicine that covers the plaintiff's illness.
 
 
 20
 As for the ambivalence factor, in Sherrill the medical advisor stated that 'his conclusions were judgment calls and that any two equally qualified physicians could reach different conclusions,' and that 'there could exist legitimate disagreement between equally qualified physicians' as to the diagnosis. 757 F.2d at 804, 805. In the present case plaintiff argues that the following exchange between the ALJ and Dr. Hall shows that Dr. Hall was ambivalent about his conclusions:
 
 
 21
 Q Well, doctor, considering all the impairments what is your opinion as to whether or not she can sustain an eight hour work day?
 
 
 22
 A From my evaluation of the case, she may be able to, I know this is not the thing to tell you, an eight hour day, forty hours a week. If she could, I would limit her to a sedentary job. Now I did not answer the question any better than I am able to. I think that is a good probability that she could do a forty hour a week, eight hours a day at a sedentary job.
 
 
 23
 App. 63.
 
 
 24
 Shortly before this exchange Dr. Hall stated that he was 'a little bit hamstrung' in evaluating plaintiff's condition because the record did not contain the operative reports from laminectomies plaintiff had undergone in 1979 and 1982. Immediately after the exchange quoted above the ALJ asked Dr. Hall to state his conclusion less reticently:
 
 
 25
 Q Well, doctor, as you know of course the first question we have to consider is whether or not the claimant's ability to perform work related functions have been impaired. And to establish that the burden of proof is on the claimant by medical findings to demonstrate that this ability to perform work related functions has truely been impaired. So based on the medical findings that you have, doctor, are you in a position to give an opinion as to whether or not work related functions have been impaired?
 
 
 26
 A You've put it very well and you've allowed me to know moderately easily make a statement. I feel that she can do sedentary work, yes sir. An eight hour a day, forth hour a week.
 
 
 27
 App. 63-64. Dr. Hall stated three more times that although the medical evidence was limited, his conclusion based on that evidence was clear. For example: 'I don't find anything in the medical evidence which precludes her from doing any sedentary work, at all.'
 
 
 28
 While the medical advisor's testimony in Sherrill was inconclusive, in the testimony quoted earlier Dr. Hall gave a conclusion, albeit reticently at first. Dr. Hall was reticent apparently because some of the medical records were unavailable. When the ALJ asked what the available evidence showed, Dr. Hall was emphatic that it showed that plaintiff can do sedentary work. Thus, we reject plaintiff's argument that Dr. Hall's testimony was ambivalent and that under Sherrill the ALJ should have disregarded it.
 
 IV
 
 29
 It must be remembered that we do not have here the opinion of a treating or examining physician that plaintiff's condition was totally and permanently disabling nor objective medical facts which would compel that conclusion on the factfinder. Dr. Hall, while a medical advisor, did in fact see and question the plaintiff and demonstrated a careful knowledge of the medical evidence. It was not error therefore for the ALJ to credit Dr. Hall's determination and after all that is what medical advisors are for.
 
 
 30
 Substantial evidence supports the Secretary's decision to deny benefits, and we therefore AFFIRM the judgment of the district court.
 
 
 31
 JONES, Circuit Judge, dissenting.
 
 
 32
 I respectfully dissent from the majority's conclusion that the district court properly affirmed the Secretary's denial of disability benefits in this case. I agree with the Report and Recommendation of the magistrate that the Secretary's finding of nondisability is not supported by substantial evidence on the record as a whole.
 
 
 33
 Rather than look only to the ALJ's decision and the evidence that supports it, our function is to look to the evidence in the record as a whole. The majority of this panel, like the district court and the ALJ, relies heavily on the testimony of the nonexamining medical advisor, Dr. Hall. The majority quotes a small portion of Dr. Hall's testimony and concludes that this testimony is not ambiguous. I look to that same portion of transcript, in the context of his entire testimony, and reach the opposite conclusion.
 
 
 34
 In the quoted colloquy, Dr. Hall's first answer was patently noncommittal. Only after the ALJ advised him of the burden of proof did the medical advisor give a firm answer. Since the ambivalence in his first answer was clearly due to the less than complete medical records, I fail to see how the legal standard of proof would change his medical opinion. Dr. Hall admitted that pain would be consistent with claimant's medical history; it is my understanding that he simply could not verify the degree of her pain with the records available to him. On this basis, I characterize the medical advisor's opinion testimony as ambivalent and discount it in accord with our decision in Sherrill v. Secretary of HHS, 757 F.2d 803 (6th Cir. 1985).
 
 
 35
 I also note that neither the decisions of the majority, the district court, nor the ALJ, commented on claimant's unrebutted testimony that she must take Tylenol #4 daily for pain. She testified plainly that she prefers not to take this prescription medication because the codeine it contains makes her drowsy. Nonetheless, she must take it and does take it for relief. The vocational expert testified that claimant's need to take medication that makes her drowsy during work hours would disable her from even sedentary employment. Tr. 91, 93-94. We know that claimant takes the medication, and we can reasonably predict that the conditions of competitive employment cannot be expected to reduce her level of pain. I cannot understand how rational decision-makers can ignore this evidence of disability.
 
 
 36
 I would reverse and remand for an award of benefits.